IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**OLLIE J. BARTON and KAY F. GRANT**,

      **Plaintiffs,**

vs.

                                                          **No. CIV 04-1123 WP/DJS**

**OXY USA, INC. and BP AMERICA PRODUCTION COMPANY, formerly known as AMOCO PRODUCTION COMPANY,**

      **Defendants.**

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Plaintiffs' Motion to Compel Discovery Against Defendant BP America Production Company **[Doc. No. 28]**, filed May 26, 2005, and fully briefed on June 22, 2005. Plaintiffs move the Court for an order compelling Defendant BP American Production Company (BP) to provide complete responses to Plaintiffs' discovery requests. Plaintiffs contend Defendant BP provided "little substantive information in response to [their] discovery requests." Pl.'s Mot. to Compel at 1.

### I. Factual Background

Plaintiffs own a one-half mineral interest in certain lands (Subject Lands) in Union County, New Mexico. In 1980, Amoco Production Company (Amoco) formed the Bravo Dome Carbon Dioxide Gas Unit (Bravo Unit). In the late 1990s, Defendant BP America Production Company (BP) acquired Amoco and assumed the operation of the Bravo Unit. In 2000, Defendant BP sold its interest in the Bravo Unit to OXY USA, Inc. (OXY), and OXY took over the operation of the Bravo Unit. According to Plaintiffs, Defendant OXY drilled a second carbon dioxide well on the

Subject Lands. It was not until 2003 that Plaintiffs discovered there were two producing carbon dioxide wells located on the Subject Lands.[1] Plaintiffs allege Defendants drilled and operated these carbon dioxide wells with complete disregard of Plaintiffs' mineral interest. Plaintiffs seek to recover unpaid revenues arising from carbon dioxide production on the Subject Lands.

## II. Discussion

Plaintiffs' Requests for Admissions, Interrogatories and Requests for Production to Defendant BP seek answers to the following questions. (1) How did Defendant BP arrive at the price for which it sold the carbon dioxide? (2) What cost deductions did Defendant BP take from the carbon dioxide sales proceeds before paying them to mineral interest owners? (3) To whom did Defendant BP pay revenues attributable to Plaintiffs' mineral interest and how much did Defendant BP pay? (4) Were Defendant BP's carbon dioxide sales/transfers to affiliates or were the sales/transfers arm's-length sales to third parties? (5) What is the notice Defendant BP claims to have given Plaintiffs and their predecessors in interest regarding the carbon dioxide operations on these lands? (5) On what basis does BP claim Plaintiffs have no standing to sue?

### A. Defendant BP's Objections Based on Relevancy

**Request for Admission No. 11–** Since the filing of Plaintiffs' motion to compel, Defendant BP has answered this request.

**Interrogatory No. 4–** Plaintiffs seek information regarding how Defendant BP calculated revenues paid to mineral interest owners for carbon dioxide produced from the Bravo Unit,

---

[1] Plaintiffs' mother died testate in 2002. Plaintiffs inherited the Subject Lands in accordance to their mother's will. In 2002, Plaintiffs discovered documentation disclosing the existence of the mineral interest. In 2003, Plaintiffs investigated the matter and found there were two carbon dioxide wells on the Subject Lands.

including revenues paid to the State Land Office and Minerals Management Service. Plaintiffs contend the price and cost basis for payment of carbon dioxide revenues by Defendant BP to the State Land Office and Minerals Management Service is relevant as it will provide a standard by which the payment of revenues derived from the Subject Lands may be evaluated.

In response to this interrogatory, Defendant BP answered that it calculates revenues due to interest owners by multiplying volume times price, deducting appropriate expenses and then multiplying this amount times the applicable ownership percentage. Defendant BP also responded royalty was calculated on carbon dioxide produced from the Bravo Unit pursuant to the terms and conditions of the Bravo Unit Agreement. Defendant BP notes that the Subject Land are <u>not governed</u> by the Bravo Unit Agreement. Instead, the development of the Subject Lands is governed by the "applicable oil and gas lease." According to Defendant BP, the Subject Lands have been developed and royalties paid pursuant to the applicable oil and gas lease terms.

Defendant BP objected to Plaintiffs' request concerning the calculation of royalty payments to the State of New Mexico and the Minerals Management Service, arguing this information is irrelevant because these royalty calculations were made pursuant to laws and regulations and agreements that do not apply to Plaintiffs' interests. In addition, Defendant BP objected to Plaintiffs' request for information pertaining to the whole Bravo Unit when their claim is limited to a partial section covered by "Plaintiffs' lease."

The Court rejects Defendant BP's contention that the information sought is irrelevant. The party opposing discovery has the burden of proving the lack of relevance. *Flora v. Hamilton*, 81 F.R.D. 576, 578 (M.D.N.C.1978). "Relevancy" for discovery purposes is distinguishable from "admissibility" for trial purposes. Rule 26(b)(1) allows for a broad range of discovery and states

3

in relevant part: "Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party, . . . . Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed.R.Civ.P. 26(b)(1). Hence, the information sought in Plaintiffs' Interrogatory No. 4 is not required to be admissible evidence itself, but it must seem reasonably calculated to lead to the discovery of admissible evidence somewhere down the road. The United States Supreme Court has construed relevance for the purposes of discovery "broadly[,] to encompass any matter that bears on, or that reasonably could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978).

Even if the requested matters are relevant, discovery will not be allowed "where no need is shown, or compliance would be unduly burdensome, . . . ." *Micro Motion, Inc. v. Kane Steel Co., Inc.*, 894 F.2d 1318, 1323 (Fed.Cir. 1990); *see also Smith v. Pfizer*, No. Civ. A. 98-4156-CM, 2000 WL 1679483, *2 (D.Kan. Oct. 26, 2000). In determining the scope of discovery, the court "must weigh the factors . . . so as not to 'deprive a party of the fair opportunity to develop and prepare a case.'" *Smith,* 2000 WL 1679483, *2. In opposing discovery on the grounds of over-breadth, a party has the burden to show facts justifying their objection by demonstrating that the time or expense involved in responding to requested discovery is unduly burdensome. "This imposes an obligation to provide sufficient detail in terms of time, money and procedure required to produce the requested documents." *Super Film of Am., Inc. v. UCB Films, Inc*., 219 F.R.D. 649, 651 (D.Kan. 2004). Thus, an objecting party cannot sustain this burden with boilerplate claims that the requested discovery is oppressive,

burdensome or harassing.  *See, St. Paul Reinsurance Company, Ltd. v. Commercial Financial Corp.,* 198 F.R.D. 508, 513 (N.D.Iowa 2000).

The information Plaintiffs seek is relevant.  Plaintiffs brought this action against Defendants BP and Oxy for damages arising from revenues derived from carbon dioxide production from lands in which they own a one-half mineral interest and for which they have never been paid.  Accordingly, Plaintiffs contend they need to know how much carbon dioxide defendants produced from the wells on the Subject Lands for the time period in question, how much they sold the carbon dioxide for, and what deductions they took prior to payment of revenues to mineral interest owners.

The Court notes Defendant BP objected to Interrogatory 4 as being overly broad in its Answer to the interrogatory, but it did not raise or address this contention in its response to Plaintiffs' motion to compel.  Accordingly, Defendant BP has abandoned this objection.  *See,* e.g., *DIRECTV, Inc. v. Puccinelli*, 224 F.R.D. 677 n. 8 (D.Kan. 2004)(objections not reasserted in the objecting parties' response to the motion to compel are deemed abandoned); *Dolquist v. Heartland Presbytery*, 221 F.R.D. 564, 568 n. 16 (D.Kan. 2004)("objections initially raised but not relied upon in response to a motion to compel are deemed abandoned").  Therefore, the Court finds Defendant BP failed to meet its burden to show that responding to Interrogatory 4 would be unduly burdensome.  Defendant BP shall provide this information to Plaintiffs.

**Request for Production No. 5–** Plaintiffs seek documents regarding Defendant BP's relationship with its affiliates regarding carbon dioxide produced from the Subject Lands. Plaintiffs contend they are entitled to evaluate the propriety of the prices set by Defendant BP for

5

carbon dioxide sold from lands in which they own a mineral interest and the deductions taken from revenues paid from such production.

Defendant BP objected to this request for production on the grounds that it is irrelevant because it does not relate to any claim or defense of the parties. The Court disagrees. Defendant BP will produce these documents.

### B.  Objections Based on Documents not in Defendant BP's Possession

In its Response, Defendant BP objected to Interrogatories Nos. 5, 11, 10, and 13 and Requests for Productions Nos. 4, 7, and 11 on the grounds that either the documents do not exist or the documents are not in its possession or control. Def. BP's Resp. at 5.

Under Federal Rule of Civil Procedure 34, any party may serve on any other party a request to produce documents "which are in the possession, custody or control of the party upon whom the request is served." Fed.R.Civ.P. 34. The federal courts have universally held that documents are deemed to be within the possession, custody or control of a party if the party has "actual possession, custody or control of the materials or has the legal right to obtain the documents on demand." *See, National Fire Ins. Co. v. Midland Bancor Inc.*, 159 F.R.D. 562, 566 (D.Kan. 1994).

**Interrogatories Nos. 5, 11, 12 and Request for Production Nos. 4, 7–** In Interrogatory 5 and Request for Production No. 4, Plaintiffs seek information regarding how Defendant BP determined the gross price for carbon dioxide produced from the Subject Lands and the name of the individual responsible for that determination. Plaintiffs contend Defendant BP has not provided any information responsive to Interrogatory 5 or Request for Production No. 4.

Interrogatory No. 11 seeks actual post-production costs incurred by BP regarding the carbon dioxide wells on the Subject Lands. Defendant BP responded it may have given this information to Defendant Oxy. However, Plaintiffs claim neither party has produced the information requested.

Interrogatory No. 12 seeks information regarding the notice Defendant BP claims it gave Plaintiffs and/or their predecessors in interest regarding carbon dioxide operations and well spacing proceedings affecting the Subject Lands. Request for Production No. 7 requests production of the alleged notice.

In response to Interrogatories Nos. 5, 11, 12 and Request for Production Nos. 4, 7, Defendant BP responded it had been unable to locate any responsive information or documents because it had transferred most documents relating to the Bravo Unit when it conveyed its interest to Defendant Oxy. In addition, Defendant BP claims it is also working with IBM Business Consulting Services (IBM), which provides accounting and data management to Defendant BP, in an attempt to gather cost-related information on a lease basis. IBM estimates its search for information will take approximately two weeks. Defendant BP contends it will promptly submit any relevant information to Plaintiffs.

Defendant shall provide the requested information in its possession and indicate which information is in Defendant Oxy's possession.

**Interrogatory No. 10 and Request for Production No. 11–** Plaintiffs seek information concerning lease operating expenses and drilling costs concerning Well No. 271, which is the well Defendant BP drilled on the Subject Lands. Defendant responded it would provide this information when IBM is able to locate this information. Defendant BP contends it has provided

7

drilling cost information to Plaintiffs.  In their Reply, Plaintiffs claim Defendant BP has not produced any information concerning lease operating expenses or drilling costs.  Defendant shall provide the requested information.

**Interrogatory No. 13–** Plaintiffs seek a description of Defendant BP's efforts to locate the identity and whereabouts of Plaintiffs and their predecessors in connection with carbon dioxide operations on the Subject Lands.  Plaintiffs allege Defendant BP had not provided any information.

Defendant BP responded it had searched the records in its possession and the records of the Oil Conservation Division and a review of these records show that "notice was provided to the owners of interest in the Unit (Bravo Unit) Area of the Oil Conservation Division hearings concerning the creation of the unit for carbon dioxide operations and to increase the spacing."  Def. BP's Response at 6.  However, as Plaintiffs point out, Defendant BP makes clear in its response to Interrogatory No. 4 that "the subject lands **are not committed** to the Bravo Dome Unit . . . ."  *Id.* at 4.

Defendant BP shall provide the requested information if it exists.  If the requested information does not exist, Defendant BP shall so indicate.

### **C.  Defendant BP's Objections Based on "Bad Drafting of Discovery Requests"**

Interrogatory No. 7 and Request for Production No. 3 seek the "prices received by Defendant BP or its affiliates and the point of valuation and transfer for such carbon dioxide which may necessarily affect the price paid."  Pls.' Mot. to Compel at 4.  According to Plaintiffs, Defendant BP transferred much of the carbon dioxide produced on the Subject Lands to its affiliates for use in affiliated tertiary recovery operations and thus likely transferred the carbon

8

dioxide at a pre-determined price to its affiliates which may not have been reflective of the market price.

In its response, Defendant BP contends it has responded to Interrogatories Nos. 7 and 14 and Request for Production No. 3, but "Plaintiffs do not like the answers provided." Def. BP's Resp. at 6. Defendant BP contends it understood Interrogatory No. 7 and Request for Production No. 3 to request "prices received by BP ('or its affiliates') at the point of valuation for carbon dioxide produced from the subject lands." *Id.* at 7. Accordingly, Defendant BP responded it would provide documents reflecting the volumes produced and its value for the relevant time period in which Defendant BP operated the 271 well. Defendant BP shall provide the information requested by Plaintiffs regarding whether it sold carbon dioxide at a pre-determined price to it affiliates.

Interrogatory 14 seeks identification of the persons to whom BP has paid revenues attributable to Plaintiffs' mineral interest. Plaintiffs claim Defendant BP produced a payment detail but it does not give the names of the persons to whom Defendant BP has paid revenues attributable to Plaintiffs' mineral interest.

Defendant contends it responded to this interrogatory by providing business records "from which the answer may be derived or ascertained" and, "if Plaintiffs' counsel had difficulty in interpreting the data provided, Plaintiffs' counsel should have consulted with BP's counsel." Def. BP's Resp. at 7. This response is inappropriate. Defendant BP will provide the requested information.

**NOW THEREFORE,**

**IT IS HEREBY ORDERED** that Defendant BP has ten days from the date of entry of this Order to provide the information and/or documents requested in Plaintiffs' interrogatories and requests for production which are the subject of Plaintiffs' Motion to Compel.

_____
**DON J. SVET**
**UNITED STATES MAGISTRATE JUDGE**