IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

OLLIE J. BARTON and KAY F. GRANT,
        Plaintiffs,

v.                                                          CIV No. 04-1123 LH/DJS

OXY USA, INC. and BP AMERICA PRODUCTION COMPANY, formerly known as AMOCO PRODUCTION COMPANY,
        Defendants.

## MEMORANDUM OPINION AND ORDER NO. 2

**THIS MATTER** comes before the Court for consideration of two related motions that are currently pending before the Court: Defendant OXY USA, Inc.,'s Motion for Partial Summary Judgment on Plaintiffs' claim under the New Mexico Oil and Gas Proceeds Payment Act (Docket No. 60)(hereafter "OXY's motion") and Plaintiffs' Motion for Partial Summary Judgment on Their Claim under the New Mexico Oil and Gas Proceeds Payment Act (Docket No. 65)(hereafter "Plaintiffs' motion"). The sole issue in these motions is whether or not carbon dioxide is included under the New Mexico Oil and Gas Proceeds Payment Act, N.M.S.A. 1978, §§ 70-10-1 to 70-10-5(1995). The Court, having considered the motions, responses and replies, as well as relevant case law, for the reasons that follow, concludes that the motion of Defendant OXY USA, Inc. (Docket No. 60) shall be **granted**, that the motion of Plaintiffs (Docket No. 65) shall be **denied**, and that Count Five of Plaintiffs' Complaint shall be **dismissed**.

**Allegations of Complaint**

Plaintiffs assert a cause of action under the New Mexico Oil and Gas Proceeds Payment Act (hereafter "the Act") in Count Five of their complaint,[1] which is a claim for the payment of proceeds from production of carbon dioxide within the time required by § 70-10-3. Tracking the language from this section of the Act, Plaintiffs allege that proceeds from the production of carbon dioxide from the Subject Lands "constitute proceeds derived from the sale of production from a well producing oil, gas or related hydrocarbons in New Mexico, and therefore payment of such proceeds are governed by the New Mexico Oil and Gas Proceeds Payment Act."  (Compl., ¶31).

**Language of the Statute**

Section 70-10-2, "Definitions" states:

> A. "oil and gas" means crude oil, natural gas, casinghead gas, condensate or any other related hydrocarbons;
> B. "oil and gas proceeds" means all payments derived from oil and gas production from any well located in New Mexico, whether royalty interest, overriding royalty interest, production payment interest or working interest, ....

Section 70-10-3, "Payment of oil and gas proceeds; time for payment." states:

> The oil and gas proceeds derived from the sale of production from any well producing oil, gas or related hydrocarbons in New Mexico shall be paid to all persons legally entitled to such payments, commencing not later than six months after the first day of the month following the date of first sale and thereafter not later than forty-five days after the end of the calendar month within which payment is received by payor for production unless other periods or arrangements are provided for in a valid contract with the person entitled to such proceeds.
>
> Payment shall be made directly to the person or persons entitled thereto by the payor and payment shall be deemed to have been made upon deposit in the United States mail.

---

[1] The full title of this pleading is "Complaint for Accounting, Trespass, Conversion, Negligence, Oil and Gas Proceeds Payment Act Violation and Declaratory Relief" (Docket No. 1)(hereafter "the complaint").

The parties have raised a strictly legal issue in their cross motions: whether or not carbon dioxide production is subject to the terms of the Act. Where, as in these motions, the unresolved issues are primarily legal rather factual, summary judgment is particularly appropriate. *Crain v. Board of Police Com'rs*, 920 F.2d 1402, 1405-06 (8th Cir. 1990).

**Plain Meaning of The Payment Act**

The determination of whether or not carbon dioxide is included under the New Mexico Oil and Gas Proceeds Payment Act is a question of legislative intent. *See Baker v. BP America Production Co.*, 137 N.M. 334, 337 (2005)("In construing the language of a statute, our goal is to give effect to the intent of the legislature"). Plain language is the primary indicator of legislative intent. *See State v. Ogden*, 118 N.M. 234, 242 (1994). When determining legislative intent, courts should afford statutes their literal reading if the words used are plain and unambiguous. *See Chavez v. Mountain States Constructors*, 122 N.M. 579, 584 (1996)(Under plain meaning rule, when language of statute is clear and unambiguous, court must give effect to that language and refrain from extrapolating unexpressed meanings). A court should resort to rules or canons of construction only if they find a statute is ambiguous. *State v. Hicks*, 132 N.M. 68, 70 (Ct. App. 2002).

In support of their position, Plaintiffs argue that rules of statutory construction demonstrate that carbon dioxide is a "gas" covered by the Act. They emphasize the general nature of the definition of "oil and gas proceeds" under § 70-10-2(B), noting that this term is defined to include *all* payments derived from oil and gas production from any well in New Mexico. Plaintiffs argue that revenues produced from the production and sale of carbon dioxide from lands covered by their mineral interest were "payment derived from oil and gas production from any well located in New

3

Mexico" and that carbon dioxide revenues are "oil and gas proceeds" covered by the Act.

In further support of their arguments, Plaintiffs cite the Uniform Statute and Rule Construction Act[2] for the proposition that "[u]nless a word or phrase is defined in the statute or rule being construed, its meaning is determined by its context, the rules of grammar and common usage. A word or phrase that has acquired a technical or particular meaning in a particular context has that meaning if it is used in that context." Plaintiffs also mention N.M.S.A. 1978, §12-2A-18(A)(2005) for the proposition that statutes should be construed, if possible, to give effect to their entire text, and to avoid an unconstitutional, absurd or unachievable result. Relying on these rules of construction, Plaintiffs argue against restriction of the term "oil and gas" to include only hydrocarbons, and in favor of the conclusion that "oil and gas proceeds" means all payment derived from oil and gas production from any well, which would necessarily include payments from carbon dioxide production.

Despite these arguments, the Court is persuaded that the plain meaning of the Act does not include carbon dioxide, a non-hydrocarbon, in its coverage. The definition in §70-10-2(A) that " 'oil and gas' means crude oil, natural gas, casinghead gas, condensate or any *other* related hydrocarbons;" (emphasis added) indicates that the four specified categories of oil and gas, including "natural gas," are "related hydrocarbons." (emphasis added). The plain meaning of this definition is that the four specific types (crude oil, natural gas, casinghead gas, and condensate), and the umbrella category of "other related hydrocarbons" all meet the definition of "oil and gas." This definition sweeps the four specific types into the general category of "other related hydrocarbons." These words are plain and unambiguous when read in context, and the Court is affording them their literal meaning.

---

[2] N.M.S.A. §12-2A-2, (2005).

4

This definition for "oil and gas" must also be used consistently under paragraph (B), defining "oil and gas proceeds" as being limited to the proceeds of what has been defined in paragraph (A), *i.e.*, specific types and the general category of other related hydrocarbons. Likewise, § 70-10-3 must be read in light of the definition of "oil and gas" and "oil and gas proceeds," as contained in § 70-10-2(A) and (B). Consequently, substituting the word "hydrocarbons" for the term "oil and gas," the Court construes § 70-1-03 to mean that hydrocarbon proceeds derived from the sale of production from any well producing hydrocarbons in New Mexico shall be paid to all persons legally entitled to such payments. The Court concludes that the Act covers only hydrocarbons and does not apply to the non-hydrocarbon carbon dioxide. The Court may not read into the Act language, in this case the term "non-hydrocarbons" that is not there, particularly because the Act makes sense as written. *Westgate Families v. County Clerk of Inc. Los Alamos County*, 100 N.M. 146, 148 (1983). The plain meaning of the Act, and its intent as disclosed by the language used is that operators promptly pay interest owners for hydrocarbons produced from the ground.

The legislature's intent to limit the Act to hydrocarbon gases is clear when the Act is compared to other New Mexico statutes that address oil and gas. As noted by Defendant BP (Docket No. 68 at 4), N.M.S.A. 1978 § 70-3-5(B)(2005) provides: "The authorization provided for pursuant to Subsection A of this section for pipelines conveying petroleum, natural gas, *carbon dioxide gas and products derived therefrom . . . .*"(emphasis added). This eminent domain statute is significant, first, because it was written in 1953 (before carbon dioxide was considered valuable). When amended in 1993, the legislature specifically included carbon dioxide as a category, and significantly, a category separate from natural gas. Secondly, the language "and products derived therefrom" in the statute is an expansive definition of "oil and gas" which would include some carbon dioxide. This is the type

5

of language that the legislature could have included in the Payment Act, had it intended for carbon dioxide to be included, as opposed to the limiting language of "or any other related hydrocarbons."

Plaintiffs also argue that, in the context of oil and gas industry case law, courts consistently hold carbon dioxide to be included within the meaning of "gas," "natural gas" and "oil and gas proceeds." This argument is trumped by the Court's conclusion that the plain language of the Act does not cover carbon dioxide. *See Whitely v. New Mexico State Personnel Bd.*, 115 N.M. 308, 311 (1993)(holding that "Clear statutory language is more probative of legislative intent than authority from other jurisdictions defining an isolated term in different contexts.").

Furthermore, Plaintiffs' reliance upon *Amoco Production Co. v. Heimann*, 904 F.2d 1405, (10th Cir. 1990) is misplaced. This case involved a proposed agreement for the "Bravo Dome" unit allocation of royalties. In that case, the court, citing § 70-2-34[3] of the Oil and Gas Act, stated that under New Mexico law, "the same provisions which relate to natural gas apply to $CO_2$, insofar as they are applicable." *Id.* at 1409, n.2. This statement was made however in the context of noting that the New Mexico Oil Conservation Commission and the Oil Conservation Division maintain jurisdiction over carbon dioxide resources as well as over hydrocarbons. This is not the issue involved in this case. Likewise, Plaintiffs' reliance upon cases that address different types of statutes (a taxing statute, a federal mineral leasing statute, land patent statutes) or leases with dissimilar and broad language, are inapposite.

Certainly, many types of statutes require definition of the terms "natural gas" and "carbon

---

[3] This section states that the oil conservation division is vested with the authority and duty of regulation and conserving the production of and preventing waste of carbon dioxide gas within New Mexico in the same manner, insofar as is practicable as it regulates, conserves and prevents waste of natural or hydrocarbon gas. "The provisions of this act relating to gas or natural gas shall also apply to carbon dioxide gas insofar as the same are applicable." *Id*.

6

dioxide." Fortunately, it is unnecessary for this Court to craft a legislative meaning for "natural gas." The Act is clear and unambiguous in its language that the term "oil and gas" is limited to four specific substances (crude oil, natural gas, casinghead gas and condensate) and to "other related hydrocarbons." It is clear that the legislature intended to link the four specific types with the general category of "other related hydrocarbons."

**Statutory Purpose**

Plaintiffs next argue that the purpose of the Oil and Gas Proceeds Payment Act is to ensure prompt payment of oil and gas proceeds. They also argue that $CO_2$ sales proceeds are subject to state regulation and supervision and taxation, just as is any other oil, gas and mineral. Given that $CO_2$ is subject to these strictures, Plaintiffs argue that it would be unfair to require OXY and BP to timely pay hydrocarbon gas revenues, but not non-hydrocarbon revenues. They argue that this Court should broadly construe the term "natural gas" to facilitate the purpose under this statute of prompt payment to interest owners.

This argument is unavailing as well. As noted above, inclusion of non-hydrocarbons in the Act is a matter of amendment by the legislature, not action by this Court, given the unambiguous language of the Act. It is plain from the language in the Act that only certain resources are covered. The decision to implied exclude coverage of many types of natural resources is the function of the legislature, not of this Court.

**WHEREFORE, IT IS HEREBY ORDERED** that Defendant OXY USA, Inc.,'s Motion for Partial Summary Judgment on Plaintiffs' claim under the New Mexico Oil and Gas Proceeds

Payment Act (Docket No. 60) shall be **granted;**

**IT IS FURTHER ORDERED** that Plaintiffs' Motion for Partial Summary Judgment on Their Claim under the New Mexico Oil and Gas Proceeds Payment Act (Docket No. 65) shall be **denied;**

**IT IS FURTHER ORDERED** that Count Five of the Complaint shall be **dismissed.**

**IT IS SO ORDERED.**

_____
**SENIOR UNITED STATES DISTRICT JUDGE**