IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO


**OLLIE J. BARTON and KAY F. GRANT,**
        **Plaintiffs,**

**v.**                                                                              **CIV No. 04-1123 LH/DJS**

**OXY USA, INC. and BP AMERICA PRODUCTION COMPANY, formerly known as AMOCO PRODUCTION COMPANY,**
        **Defendants.**


**MEMORANDUM OPINION AND ORDER NO. 4**

**THIS MATTER** comes before the Court on Defendant BP America Production Company's Motion for Summary Judgment (Docket No. 75). This motion seeks summary judgment on the grounds that Plaintiffs' claims are time barred under the applicable statute of limitations and/or pursuant to laches[1], and also on grounds that Plaintiffs' claims of trespass and conversion fail. The Court, having considered the motion, response and reply, as well as relevant case law, for the reasons that follow, concludes that the motion of BP America Production Company (hereafter "BP") shall be **denied**, and that Counts One, Four and Six of the Complaint remain viable claims in this lawsuit.

---

[1] This motion also seeks summary judgment on grounds that Plaintiffs' claims of trespass and conversion fail. In Memorandum Opinion and Order No. 3, Counts Two and Three of the complaint were dismissed. Accordingly, this part of the immediate motion is moot.

1

**Remaining Claims**

The Court has entered orders in this case disposing of Plaintiffs' claims under the New Mexico Oil and Gas Proceeds Payment Act (Count Five) and dismissing Plaintiffs' claims for trespass and conversion (Counts Two and Three). Plaintiffs' claims for an accounting (Count One), for negligence (Count Four), and for declaratory judgment (Count Six) have been unchallenged by Defendants and remain in the case.

Several relevant, undisputed facts are set forth in Memorandum Opinion and Order No. 3, filed simultaneously with this opinion. Rather than reiterate these undisputed facts, the Court incorporates them by reference. In that same opinion, the Court also determined that, when Hutcherson granted Amoco the rights to explore for and produce carbon dioxide from the Subject Lands, Amoco (and subsequently OXY) and Plaintiffs became cotenants in the mineral interest in the Subject Lands. (Memorandum Opinion and Order No. 3 at 4).

In Count One, "Accounting," Plaintiffs allege that they are entitled to a full and complete accounting from Defendants as to all revenues generated, and costs and expenses incurred, with regard to the exploration, drilling and production of oil, gas and minerals, from the Subject Lands to which their mineral interest pertains, from the time such operations were commenced thereon through the present time. (Compl., ¶ 18). In Count Four, the claim for negligence, Plaintiffs allege a duty, as between mineral interest owners, *i.e.*, a duty of Defendants to account to Plaintiffs for revenues attributable to their mineral interest. (*Id.*, ¶ 28). These two sets of allegations are substantially the same and also are basically the same as those contained in Count Six, which seeks the Court to declare that Plaintiffs are entitled to an accounting. In addition to seeking an accounting, Count Six seeks the actual payment of revenues in connection with their mineral interests. Given the same basic

substance of each of these three claims, for purposes of the statute of limitations analysis, the Court will consider them as a claim for an accounting and for payment of revenues. It is therefore incumbent on the Court to decide whether the statute of limitations in an action for an accounting and demand for payment has begun, and if so, when, and whether Plaintiffs filed this type of action in a timely manner or are barred by the statute of limitations.

**Legal Analysis**

As discussed on page 4 of Memorandum Opinion and Order No. 3, one co-tenant may have the legal right to proceed to drill and produce minerals from jointly owned land, however this right is subject to a duty to account to his co-tenants for their proportionate part of the value of the minerals produced, less certain expenses. *Cox v. Davison*, 397 S.W.2d 200, 201 (Tex. 1965); *Prairie Oil & Gas Co. v. Allen*, 2 F.2d 566 (8th Cir. 1924). This reasoning is based on the distinctive legal relationship existing between cotenants; that is, each cotenant has the right to enter upon the common estate and a corollary right to possession. *See Burnham v. Hardy Oil Co.*, 147 S.W. 330, 335 (Tex.Civ.App. 1912). This reasoning is explained in greater depth in Memorandum Opinion and Order No. 3.

The case of *Armijo v. Neher*, 11 N.M. 645 (Terr. of N.M. 1903) discussed the very issue raised in the immediate motion – "when the statute of limitations begins to run against a co-tenant who seeks to recover his share of the rents and profits of the common estate." The *Armijo* Court decided that a "repudiation of the relation of co-tenancy and adverse holding at once starts the running of the statute of limitation, both as to the possession and the rents and profits received." *Id.* at 646. (citation omitted).

This topic was discussed in *Martinez v. Martinez*, 135 N.M. 11 (Ct. App. 2003). This case involved a divorcee who claimed to be a tenant in common in real property that had not been distributed in her divorce, who was seeking an accounting with respect to business operated on the property, partition and damages for allegedly fraudulent actions by her former husband. This case elaborated on certain special protections under the law that tenants in common enjoy. The court noted that, for example, as a tenant in common, Ms. Martinez would be subject to a limitations period only if her cotenant did "something which amounts to an ouster." *Id.* at 15, *quoting In re Estate of Duran*, 133 N.M. 553 (2003)(internal quotation marks and citation omitted). In the absence of that, the court held that the four-year statute of limitations in N.M.S.A. 1978 § 37-1-4 (2005) did not apply to an action for accounting and partition of real property.

Based upon the *Naher* and *Armijo* cases, the relevant inquiry is to determine if there has been a repudiation of the relation of co-tenancy, or any action by Defendants that amounts to an ouster of Plaintiffs, such that the statute of limitations would have began to run.

As noted by the *Armijo* case, insofar as rents and profits and an action for an accounting are concerned, such a repudiation is usually evidenced by a demand and refusal to account for rents and profits received. *Armijo v. Neher*, 11 N.M. at 646; *see also* 1 AM.JUR.2D *Accounts and Accounting* § 62 (2006)(Generally, there must be a demand and a refusal to account before an action for accounting will lie, and the statute of limitations does not commence to run until after such a demand and a refusal to account.). Undisputed facts, contained in Paragraph 7 of BP's motion, indicate that the earliest possible date that Plaintiffs contacted one of the Defendants about unpaid royalties was sometime after the 2002 death of Plaintiffs' mother and after their discovery of a contract for sale of the Subject Lands in her effects. Based upon BP's statement of undisputed facts, this constituted a

demand by Plaintiffs, and presumably resulted in a refusal by OXY, given the subsequent filing of this lawsuit. Under this factual scenario, the statute of limitations would have begun to run sometime in 2002, in light of this repudiation of the cotenancy relation by Plaintiffs. Based on this approach, Plaintiffs' complaint was timely filed on October 4, 2004 – well within the four year statute of limitations that applies to an action for an accounting.[2]

Alternatively, the Court must consider whether there was any earlier action by Defendants that would have amounted to an ouster of Plaintiffs, such that the statute of limitations would have begun to run previously. Ouster of a cotenant amounts from an express denial of the title and right to possession of a fellow tenant openly and unequivocally. *See Board of Trustees of Tecolote Land Grant v. Griego,* 136 N.M. 688 (Ct.App. 2004). A renunciation of a cotenant's use of common property requires giving the other co-tenants actual notice or else by conduct that clearly indicates that the original permissive use was changed to one of adverse character. *In re Estate of Duran*, 133 N.M. at 682. There simply is no evidence that Plaintiffs' cotenants ever took any actions to interfere with Plaintiffs' title to, or right to possession of, the mineral interests.

On page 12 of its motion, BP argues that Plaintiffs' mineral co-tenants claimed adversely to Plaintiffs through several instruments that were filed as a matter of public record. These included a 1971 oil and gas lease covering the Subject Lands (Ex. F to Mot.) and a 1985 warranty by the Hutchersons in a Division Order and Stipulation that they owned 100% of the minerals in the Subject Land (Ex. J to Mot.). BP argues that these documents put Plaintiffs on actual and/or constructive notice that the Hutchersons were claiming adversely, which would have started the accrual of the statute of limitations. BP also argues that it repudiated the cotenancy relationship in 1984, when it

---

[2] N.M.S.A. 1978, § 37-1-4 (2005).

produced carbon dioxide from the Subject Land and did not share the profits.

These actions are insufficient to constitute a repudiation or ouster. As the *Armijo* case states, action affecting the title and possession are the "principal things; the rents and profits incidental thereto." *Armijo v. Neher*, 11 N.M. at 645. That court explained that, insofar as possession by a co-tenant is concerned, there is a presumption that the cotenant is merely exercising the right that the law gives him, and this presumption must in some way be overcome before the possession becomes adverse and the statute of limitations is set in motion. *Id*. "This presumption may be overcome in may ways, such as direct notice of adverse holding to the ousted tenant, demand and refusal to be let into possession or entry, or claiming title under a deed purporting to convey the whole title." *Id*. at 12-13. Bearing this in mind, the *Armijo* court held that the entry of the defendant, claiming title under his deed purporting to convey the whole estate, operated as a constructive ouster and notice to his co-tenants, sufficient to start the statute of limitations in his favor as to the rents and profits received by him.

When a cotenant claims title under his deed to interest of a cotenant, this is obviously direct action that relates to title and possession. Nothing contained in Exhibits F and J has any actual effect on Plaintiffs' title or possession, but merely relates to the rents and profits, "incidental thereto." The lease certainly has no such effect. *See Williams v. Sinclair Refining Co., Inc.*, 39 N.M. 388, 389 (1935)(lease executed by one co-tenant, even though ineffectual as to the other co-tenant, created a co-tenancy entitling the lessee to reasonable use of the property provided no ouster by way of express denial of title and right to possession of the other co-tenant). Furthermore, the Limited Stipulation of Mineral Interests (Ex. J) expressly states that the stipulations, covenants and agreements therein were for the purpose of making production payments. There is no indication in

the record (other than representation of counsel) that this document was in fact ever filed in Union County, or is in any way a matter of public record, such as would provide constructive notice to Plaintiffs.

For these reasons, the Court concludes that Plaintiffs' claims for an accounting were timely filed and are not barred by the applicable statute of limitations.

**Laches**

BP's motion argues that Plaintiffs' claims for an accounting are time-barred by laches. As noted in its brief at page 12, the doctrine of laches "prevents litigation of a stale claim where the claim should have been brought at an earlier time and the delay has worked to the prejudice of the party resisting the claim." *Garcia v. Garcia*, 111 N.M. 581, 588 (N.M. 1991). The Court has determined above that this claim should not have been brought at an earlier time. Under the Court's analysis, BP is unable to meet the four distinct elements required to prove this affirmative defense. Most notably lacking of proof is the second element, *i.e.*, delay in asserting the complainant's rights, the complainant having had knowledge or notice of the defendant's conduct and having been afforded an opportunity to institute a suit. *Baker v. Benedict*, 92 N.M 283, 286 (1978).

**WHEREFORE,** Defendant BP America Production Company's Motion for Summary Judgment (Docket No. 75), on the grounds that Plaintiffs' claims are time barred under the applicable statute of limitations, and/or pursuant to laches is **denied**.

**IT IS FURTHER ORDERED** that Defendant's motion seeking summary judgment on Plaintiffs' claims of trespass and conversion are **denied as being moot.**

**IT IS SO ORDERED**.

_____
**SENIOR UNITED STATES DISTRICT JUDGE**

8