**FILED**

UNITED STATES DISTRICT COURT
ALBUQUERQUE, NEW MEXICO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

MAR **3 0** 2007

MATTHEW J. DYKMAN
CLERK

OLLIE J. BARTON and KAY F.
GRANT,

Plaintiffs,

v.

OXY USA, INC. and BP AMERICA
PRODUCTION COMPANY, formerly
known as AMOCO PRODUCTION
COMPANY,

Defendants.

CIV No. 04-1123 LH/DJS

## MEMORANDUM OPINION AND ORDER NO. 5

**THIS MATTER** comes before the Court on Plaintiffs' Motion for Partial Summary

Judgment on Applicability of § 70-1-18(B) (Docket No. 70).  The Court, having considered the

motion, the response and reply thereto, as well as applicable case law, concludes that Plaintiffs'

motion is well-taken and shall be **granted**.

### Undisputed Facts

Neither Defendant controverts the eleven enumerated material facts the Plaintiffs set forth

in their memorandum brief (Docket No. 71).[1]  The Court therefore accepts the following summary

---

[1]  Despite the fact that Oxy USA, Inc. ("OXY") was dismissed as a party from this lawsuit by order dated August 17, 2007 (Docket No. 116), the Court has taken into consideration OXY's brief submitted in opposition to Plaintiffs' motion.

1

of facts, submitted by Plaintiffs, to be true[2], relevant and material:

1. By Warranty Deed dated July 12, 1945, Hannah K. Cushman and Ernest M. Cushman conveyed to Alfredo Hutcherson lands in Union County, New Mexico, expressly reserving one-half of the oil, gas and mineral rights in and under said lands:

Township 20 North, Range 34 East, NMPM
Section 27:  S/2N/2

This Warranty Deed was recorded on February 15, 1946, in the real property records of Union County, New Mexico, and has been of record from that time through the present.[3]

2. There are two producing carbon dioxide wells on Section 27, Township 20 North, Range 34 East, NMPM, Union County New Mexico:  Bravo Dome Well No. 2734-271 ("271 Well") located on the SW/4 NE/4 of Section 27, and Bravo Dome Well No. 2734-272 ("272 Well") located on the SW/4 SE/4 of Section 27.

3. Title to the Cushman mineral interest passed from Plaintiffs' grandparents, Hannah K. Cushman and Ernest M. Cushman, through Plaintiffs' parents, James D. Cushman and Frances M. Cushman, to Plaintiffs, who are currently the record title owners of the Cushman interest.

4. Amoco Production Company, now known as BP America Production Company ("BP"), applied for and obtained approval from the New Mexico Oil Conservation Division ("OCD"), to create the Bravo Dome Carbon Dioxide Unit covering certain lands in Union, Harding and Quay Counties, New Mexico.  The lands covered by the Cushman interest are not a part of that unit

5. The Cushman interest owners did not sign a lease with either Defendant, regarding the Cushman interest, nor did the Cushman interest owners otherwise enter into a pooling agreement with either Defendant.  Neither Defendant brought a compulsory pooling proceeding before the OCD to pool the Cushman interest.

6. BP's 1984 Pooling Declaration purports to pool certain lands leased to it by Hutcherson and Jacobs.  Plaintiffs are not parties to that Pooling Declaration, which did not purport to pool the Cushman interest.

---

[2] Local Rule 56.1(b) of this Court provides that material facts set forth in the statement of the movant will be deemed admitted unless specifically controverted. D.N.M.LR-CIV. 56.1(b).

[3] The mineral interest reserved will be referred to in this opinion as the "Cushman interest."

In Defendants' factual sections they state, and it is undisputed[4], that, despite this mineral reservation, in 1971, the Hutchersons entered into an oil and gas lease with Amoco (B.P.'s predecessor) for the entire north-half of Section 27. (BP Fact No. 1).  BP states that in 1979 it obtained a title opinion from a qualified law firm,  which stated that Wilda  Hutcherson owned all of the minerals in the north-half of Section 27.  (BP Fact No. 2).  In 1985, Wilda Hutcherson, Michael Hutcherson and Marsha George signed Division Orders warranting that they each owned all the mineral interests in the north-half of Section 27.  (BP Fact No. 3).  Amoco had voluntary agreements from interest owners warranting that they owned 100% of the minerals.  (BP Fact No. 4).  Amoco filed a Pooling Declaration in the Union County records pooling the south-half and the north-half of Section 27.  (*Id.*).  (See Ex. J to Ps' Mot. for Part. Sum. Judg.).


**Legal Discussion**

Summary judgment is appropriate only if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law."  FED.R.CIV.P. 56(c).  If no genuine issue of material fact is in dispute, the court must determine the correct application of substantive law. *Applied Genetics Int'l, Inc. v. First Affiliated Securities, Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1990).

Plaintiffs seek recovery under N.M. STAT. ANN. § 70-2-18(b), which states:

B.  Any operator failing to obtain voluntary pooling agreements, or failing to apply for an order of the division pooling the lands dedicated to the spacing or proration unit as required

---

[4] Insofar as Defendants' factual assertions are concerned, Plaintiffs affirmatively state on page 3 of their reply brief that they "admit Additional Fact Nos. 1-6 in Oxy's Response and Additional Fact Nos. 1-4 in BP's Response."  The Court will hold Plaintiffs to these admissions, despite some statements later in their reply brief, attempting to discredit the "additional facts" of Defendant BP.  *See* page 4 of Plaintiffs' reply brief.

by this section, shall nevertheless be liable to account to and pay each owner of minerals or leasehold interest, including owners of overriding royalty interests and other payments out of production, either the amount to which each interest would be entitled if pooling had occurred or the amount to which each interest is entitled in the absence of pooling, whichever is greater.

In Count One of the Complaint, entitled "Accounting," Plaintiffs allege that they are entitled to a full and complete accounting from Defendants as to all revenues generated, and costs and expenses incurred, with regard to the exploration, drilling and production of oil, gas and minerals, from the Subject Lands to which their mineral interests pertain, from the time such operations were commenced thereon through the present time.  (Compl., ¶ 18).  In Count Four, the claim for negligence, Plaintiffs allege a duty, as between mineral interest owners, *i.e.*, a duty of Defendants to account to Plaintiffs for revenues attributable to their mineral interest. (*Id.*, ¶ 28).  These two sets of allegations seek substantially the same relief, and also seek basically the same relief as that sought in Count Six, which asks the Court to declare that Plaintiffs are entitled to an accounting.  In addition to seeking an accounting, Count Six seeks the actual payment of revenues in connection with their mineral interests.

Section 70-2-18(b) is part of a scheme of legislative and regulatory control of oil and gas production in New Mexico, which, in several respects, necessarily modifies the laws of co-tenancy. In order to prevent waste and protect correlative rights, the New Mexico Legislature, and the New Mexico Oil Conservation Division, have established a scheme for conserving oil and gas, which includes provisions for the pooling of mineral interests.

"Pooling" means the bringing together of small tracts sufficient for the granting of a well permit under applicable spacing rules.  The purpose, and usual effect, of pooling is to prevent the physical and economic waste that accompanies the drilling of unnecessary wells.  A second, equally

4

important purpose, is to protect the correlative rights of landowners over a reservoir.  Thus, pooling

refers to the aggregation of two or more tracts of land into a drilling unit of a prescribed size.  6

HOWARD R. WILLIAMS & CHARLES J. MEYERS, OIL AND GAS LAW § 901 (2006).

In this regard, § 70-2-18(B) allows a mineral interest owner whose interest was not properly

pooled as required therein, to be paid the amount to which he would be entitled if pooling had

occurred, or the amount to which he would be entitled in the absence of pooling, whichever is greater.

The language of the statute is straight-forward.  It provides that an operator shall be liable to

account to and pay each owner of minerals or leasehold interests, if that operator fails to obtain

voluntary pooling agreements, or fails to apply for an order of the division pooling the lands dedicated

to the spacing or proration unit as required by the statute.  Defendants do not dispute that they did not

obtain a voluntary pooling agreement from the Cushmans and that Defendants did not apply for a

division order.

None of BP's reasons for its failure to obtain a voluntary pooling agreement or to apply for

a division order pooling the lands changes a basic fact that BP admits:  the Cushman interest owners

did not enter into a pooling agreement with Defendants.  Defendants contend that they were issued

a title opinion that missed the existence of the recorded Cushman interest, and that the Hutchersons

made false representations that they owned all of the mineral interests for the Subject Lands.  Neither

of these contentions provide sufficient legal justification, however, for BP's  failure to comply with

the statute.  On page 3 of its response brief, BP states that if it had been aware of Plaintiffs' interest,

it "would have attempted to obtain a voluntary agreement from the Plaintiffs' predecessors or sought

an order pooling their interest."  Ignorance of the Cushman mineral interest is no excuse.  This Court

cannot condone or overlook BP's failure to determine the true ownership of these mineral interests.

5

Furthermore, most notably, BP's argument that the Hutchersons had authority to pool the non-leasing co-tenants' (i.e. the Cushman's) mineral interest, is without merit. There is certainly no proof in the record that the Hutchersons had such express authority, nor is there proof of any subsequent ratification of the lease by the Cushmans. There is no proof that the Cushmans received proper notice of any proceeding affecting their interest. The Hutchersons signed division orders warranting that they owned all of the mineral interests in the north-half of Section 27; they did not purport to be acting on behalf of their co-tenants. In this case, although the Hutchersons included a pooling agreement for all mineral interests for the Subject Lands in their lease with BP, this was done without the consent or joinder of the Cushman interest owners, their co-tenants. The mere fact of the co-tenancy relationship, contrary to Defendant's arguments, does not provide the basis for such leasing authority. *See Schwartz v. McDaniel*, 202 Okla. 324, 325 (1950).

As stated above, the common law in this instance is modified by this legislative regulatory scheme, and the Court is required to apply the clear language of the statute. Furthermore, even under the common law, ordinarily, a tenant in common who has not been authorized by his co-tenants may not execute a lease of more than his or her own interest in the common property, that will bind other co-tenants, absent subsequent ratification. 86 C.J.S. TENANCY IN COMMON § 138 (2007). While a co-tenant is free to deal with a stranger regarding his proportionate share in an estate, a co-tenant may not convey, alienate, or encumber the interest of another co-tenant unless he is clearly and properly authorized to do so. *Landskroner v. McClure*, 107 N.M. 773, 775(1988). Accordingly, in *Landscroner*, a co-tenant's conveyance of his interest in the co-tenant estate did not affect the interests of the other co-tenants, even though the language of the warranty deed did not limit the conveyance to being one of the co-tenants' undivided one-half interest only. *Id*. at 776.

6

Based upon the foregoing, the Court concludes that it is undisputed, pursuant to the language of the statute, that Defendant BP failed to discharge its obligation as operator, to properly pool the Cushman interest.  BP was acting pursuant to an unauthorized lease, which contained language permitting pooling.  Because the Hutchersons did not have the right to lease the Cushman interest, they did not have the right to pool the Cushman interest. BP is therefore liable under § 70-2-18(B), and is accordingly required to make payment of the greater of the revenues owed if the interest was pooled, or in the absence of pooling.

**<u>Supplemental Information From the Parties is Required</u>**

The issue of damages quantification remains largely undeveloped in the record before the Court.  Plaintiffs' reply brief, at page 4, indicates three alternative approaches for their recovery, without a sufficient factual basis for the award of any of the three remedies mentioned. Inconsistently, on page 12, Plaintiffs state that the "rule of capture applies in this circumstance, and Plaintiffs are entitled to payment of CO2 revenues based on a full one-half mineral interest regarding the 271 Well on the S/2N/2 of Section 27."

In lieu of a Pre-Trial Order, the parties are hereby directed to file supplemental briefs. Plaintiffs shall file with the Court, no later than May 1, 2007, a supplemental brief on the elements of damages they now seek, outlining in considerable detail the damages to which they contend they are entitled, the legal justification for such damages, and the method of proof they intend to employ in establishing such damages, including which witnesses and  types of records they will be relying upon.  For each damages witness, Plaintiffs shall elaborate as to the content of his/her anticipated testimony, and types of exhibits that will used in connection with the anticipated testimony.

7

Defendant BP shall have 30 days from the filing of Plaintiffs' supplemental brief to file a brief in response thereto, with the same type of explicit detail.  If Plaintiffs wish to file a reply brief, it shall be filed no later than 15 days following the filing of Defendant's response brief.  Both parties are encouraged to prepare summary exhibits, to the greatest extent possible, for the remaining accounting phase of this proceeding.

It appears to the Court that the appointment of a special master *may* be warranted, to assist the Court in performing the calculations necessary to determine an appropriate accounting due to Plaintiffs.  This is a non-jury matter, a matter of account and of difficult computation of damages.  Compilation and interpretation of the appropriate figures are the primary remaining tasks. The Court will reserve judgment as to whether or not to appoint a special master, until the briefs prescribed above have been submitted. The Court is cognizant that reference to a special master shall be the exception and not the rule, pursuant to FED.R.CIV.P. 53(b).

To assist the Court, should this appointment be deemed necessary, the parties are hereby directed to make a good-faith effort to concur upon two names of individuals who have appropriate qualifications and experience in this area of the law, to perform as a special master.  In the event that the parties are unable to reach a consensus as to two potential nominees for this appointment, they each are instructed to submit the names of two persons who would be satisfactory to them.  These names shall be submitted to the Court within 15 days of the filing of Defendant BP's supplemental brief.

As above-noted, the amount of damages due Plaintiffs under the substantively similar Counts One, Four, and Six of the Complaint, remains to be determined.  To the extent that any other unresolved issue requires the attention of the Court, the parties shall so indicate in writing to the

8

Court, no later than May 1, 2007.

**WHEREFORE, IT IS HEREBY ORDERED** that Plaintiffs' Motion for Partial Summary Judgment on Applicability of § 70-1-18(B) (Docket No.  70) is **granted**.

**IT IS FURTHER ORDERED** that the parties shall comply with the supplemental briefing schedule set forth herein, and with the processes herein specified for the nomination of a suitable special master, and for raising any further unresolved issues with the Court.

**IT IS SO ORDERED.**

**SENIOR UNITED STATES DISTRICT JUDGE**